**MACHINE SYSTEMS LTD., INC., Plaintiff,**

v.

**IGUS, INC., Defendant.**

**No. 02–71673.**

United States District Court, E.D. Michigan, Southern Division.

May 15, 2006.

Raymond M. Galasso, Simon, Galasso, Troy, MI, Christopher S. Walton, Simon, Galasso, Austin, TX, for Plaintiff.

Maurice U. Cahn, Cahn & Samuels, Washington, DC, Patrick M. McCarthy, Howard & Howard, Ann Arbor, MI, for Defendant.

*AMENDED ORDER ACCEPTING MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION*

EDMUNDS, District Judge.

This matter has come before the Court on the Special Master's Report and Recommendation. Being fully advised in the premises and having reviewed the record and the pleadings, including the Report and Recommendation and any objections thereto, the Court hereby ACCEPTS AND ADOPTS the Special Master's Report and Recommendation. It is further ordered that Plaintiff's motion for summary judgment is DENIED, Defendant's motion for summary judgment is GRANTED, and the case is hereby DISMISSED.

SO ORDERED.

### REPORT AND RECOMMENDATION

JOHN R. THOMAS, Special Master.

Plaintiff Machine Systems Ltd., Inc. ("Machine Systems") is the proprietor of U.S. Patent No. 5,735,610. The '610 patent, titled "Linear Guide," generally concerns a device for moving parts down an assembly line, from one work station to another. In particular, the '610 patent describes and claims a linear guide with a readily removable and replaceable non-rolling bearing insert. The bearing insert

is intended to facilitate the motion of a slide body along a track.

Machine Systems commenced this action against defendant Igus, Inc. ("Igus"), asserting that its DryLin®T product infringes the '610 patent. On September 3, 2003, the Court issued an Order of Claim Construction following a patent claim construction hearing. On November 15, 2005, both litigants filed motions for summary judgment pertaining to the issue of infringement. According to Machine Systems, the Igus DryLin®T linear guide infringes claims 1, 2, 5, 8, 9, and 12 of the '610 patent. Igus instead contends that it is entitled to summary judgment of non-infringement of each of the asserted claims of the '610 patent (claims 1–12, 14, and 19).

The Court subsequently referred these competing motions to the Special Master. At the request of the parties, the Special Master reviewed their motions on the written record and supporting exhibits. On the basis of his review, the Special Master recommends that the summary judgment motion of plaintiff Machine Systems be denied, and that the summary judgment motion of defendant Igus be granted.

## I. Standards for Summary Judgment

Under Rule 56 of the Federal Rules for Civil Procedure, summary judgment is appropriate if, drawing all factual inferences in favor of the non-movant, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. *See also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (the issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."); *Combined Sys., Inc. v. Def. Tech. Corp.,* 350 F.3d 1207, 1209 (Fed.Cir.2003) ("Summary judgment is appropriate if, drawing all factual inferences in favor of the non-movant, there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."). The Supreme Court has explained that "[o]ne of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupportable claims or defenses...." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In assessing the two summary judgment motions, the Special Master is prohibited from weighing the facts of the case. *See 60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435–36 (6th Cir.1987) ("The judge's function at the point of summary judgment is limited to determining whether sufficient evidence has been presented to make the issue a proper jury question, and not to judge the evidence and make findings of fact."). Rather, the Special Master must instead examine any pleadings, depositions, answers to interrogatories, admissions, and affidavits in a light that is most favorable to the nonmoving party. *See EZ Dock, Inc. v. Schafer Sys., Inc.,* 276 F.3d 1347, 1353 (Fed.Cir.2002). The burden lies with the moving party, as the proponent of a dispositive motion, to demonstrate the absence of a genuine issue of material fact. *Anderson v. Liberty Lobby,* 477 U.S. at 248, 106 S.Ct. 2505.

The Federal Circuit has described the determination of infringement as a two-step process. "First, the trial court must construe the claims." *JVW Enterprises, Inc. v. Interact Accessories, Inc.,* 424 F.3d 1324, 1329 (Fed.Cir.2005). Second, "the properly construed claims are compared to the accused product or process." *Ranbaxy Pharms., Inc. v. Apotex, Inc.,* 350 F.3d 1235, 1240 (Fed.Cir.2003). With respect to the present litigation, the Court construed the limitations of the '610 patent

that are relevant to this dispute in its September 3, 2003, Order of Claim Construction. In order to facilitate the Special Master's comparison of the construed claims to the accused device, the parties provided him with Exhibit 4, consisting of the accused Igus DryLin®T linear guide, as well as Exhibit 5, a video clip of a technician's assembly of the components of that product.

■■■ To prove infringement, the patent proprietor must show that the accused device embodies each claim limitation, either literally or under the doctrine of equivalents. *Deering Precision Instruments, L.L.C. v. Vector Distribution Sys., Inc.*, 347 F.3d 1314, 1324 (Fed.Cir.2003). "Literal infringement requires that each and every limitation set forth in a claim appear in an accused product." *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 424 F.3d 1293, 1310 (Fed.Cir. 2005) (citation omitted). Under the doctrine of equivalents, "a product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner–Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997) (citation omitted). The doctrine of equivalents is subject to a number of constraining principles, among them the concept of prosecution history estoppel. "Prosecution history estoppel can prevent a patentee from relying on the doctrine of equivalents when the patentee relinquishes subject matter during the prosecution of the patent, either by amendment or argument." *Aquatex Indus., Inc. v. Techniche Solutions*, 419 F.3d 1374, 1382 (Fed.Cir.2005) (citation omitted).

■■■ The question of infringement, either literally or under the doctrine of equivalents, is one of fact. E.g., *Golden Blount, Inc. v. Robert H. Peterson, Co.*, 438 F.3d 1354, 1361 (Fed.Cir.2006). However, "[i]ssues relating to the application and scope of prosecution history estoppel, including whether the presumption of surrender of subject matter has arisen and whether it has been rebutted, are questions of law to be decided by the court." *Biagro Western Sales, Inc. v. Grow More, Inc.*, 423 F.3d 1296, 1301–02 (Fed.Cir. 2005).

■■■ Viewing the standards for summary judgment and infringement together, the Federal Circuit has instructed that "[s]ummary judgment is appropriate when it is apparent that only one conclusion as to infringement could be reached by a reasonable jury." *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1323 (Fed.Cir.2001) (citing *ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 540 (Fed.Cir. 1998)). "Summary judgment of noninfringement is appropriate where the patent owner's proof is deficient in meeting an essential part of the legal standard for infringement, since such failure will render all other facts immaterial." *Telemac Cellular Corp.*, 247 F.3d at 1323 (citing *London v. Carson Pirie Scott & Co.*, 946 F.2d 1534, 1537 (Fed.Cir.1991)). In particular, if there is no genuine issue of material fact that the accused product does not embody even a single limitation of the asserted claim, either literally or equivalently, then summary judgment of noninfringement is properly granted.

With these standards in mind, the Special Master will review the two asserted independent claims of the '610 patent, claims 1 and 19, in sequence.

## II. Claim 1

The first independent claim of the '610 patent, claim 1, recites (with emphasis added):

1.  A linear guide assembly comprising:

a slide body having a top, a bottom, opposing sides and opposing ends, portions of said body defining a channel extending longitudinally through said body and between said ends;

a guide rail having opposing ends and a cross-sectional shape corresponding to a cross-sectional shape of said channel to permit said rail to be received in said channel;

said body being on said rail and said body longitudinally moveable along said rail while being restricted from laterally and vertically moving relative to said rail;

non-rolling bearing means for facilitating longitudinal movement of said body along said rail, *said bearing means mounted to said body;* and

*mounting means located within said channel for removably mounting said bearing means to said body,* said mounting means cooperating with said bearing means for vertically and laterally retaining said bearing means relative to said body and permitting removal and replacement of said bearing means independent of replacement of said body.

As can be appreciated from its wording, claim 1 requires in relevant part that the linear guide assembly incorporate a non-rolling bearing means "mounted" to a slide body. Claim 1 further requires "mounting means" for removably mounting the bearing means to the slide body.

This Court has construed the terms "mounted" and "mounting means" to have the same meaning. Order of Claim Construction at 11. Identifying the function of the "mounting means" as "mounting the bearings to the slide body in such a way that the bearings are vertically and laterally retained to the slide body while permitting the bearings to be removed and replaced," *id.* at 11, the Court held that "mounting means" should be interpreted as "grooves or apertures of various cross-sectional shapes that restrict insertion or removal of the bearings to longitudinal movement and their equivalents." *Id.* at 12. The Court identified the three specific embodiments described in the '610 patent as follows:

(1) To mount the bearing inserts in the channel of the slide body, cylindrical grooves are longitudinally machined or otherwise formed in the channel of the slide body. The cylindrical grooves are further formed so that their cross-sectional shape defines an incomplete circle in the slide body. As the term is used herein, an incomplete circle is meant to define a portion of a circle being greater than a semi-circle but less than a complete circle. Formed in this manner, the cylindrical grooves allow for the bearing inserts to be longitudinally press-fit or inserted into the grooves with a portion of the inserts extending beyond those surfaces of the body which actually define the channel. (Col. 4, ll.33–43.);

(2) As with the prior embodiment, the bearing insert is inserted longitudinally into the channel. Since the bearing insert also conforms to the protrusions of the slide body, the bearing insert can only be longitudinally inserted and removed from the channel. (Col. 5, ll.32–37.);

(3) These bearing inserts, however, are generally trapezoidal in cross-sectional shape and are longitudinally press-fit or inserted into trapezoidal grooves defined in the channel. The grooves are formed such that the base of the trapezoid is defined in the interior of the body, away from the channel, preventing removal of the bearing inserts other than by longitudinal withdrawal from the grooves. (Col. 5, lines 40–47).

*Id.*

The accused product, the Igus Dry-Lin®T, consists of an open, grooved, alu-

minum slide body that defines a T-shaped channel. The channel facilitates sliding registration of the slide body along a corresponding T-shaped rail. The accused product includes six elongated bearing inserts that are seated in the open, elongated grooves formed in the aluminum slide body. Small tabs have been formed at one end of each of the inserts; these tabs are inserted into slots in an end cap that is attached to the slide body.

■ A comparison of claim 1 with the accused product reveals that there can be no finding of literal infringement as a matter of law. Inspection of the Igus Dry-Lin®T reveals that the "bearing means" are not "mounted to said [slide] body" as claim 1 requires. For the same reason, the accused product also fails to incorporate another limitation of claim 1, the requirement that "mounting means [be] located within said channel." Rather, the bearing inserts loosely sit in grooves formed within the slide body. Each bearing insert is in fact held in place through the use of small tabs placed at the end of the insert. These tabs are designed to be placed within slots that have been formed within the end caps. Indeed, loosening the end cap from the slide body causes the tabs on the bearing inserts to disengage from the slots and to fall freely away from the slide body. Plainly insertion or removal of the bearing inserts is not restricted to longitudinal movement, for they could also be installed or taken out in a vertical manner as well. Although the Special Master was readily able to make this determination by inspection of the accused device, uncontradicted evidence of record also supports this result. *See* Declaration of Frank Blase at 23–30 (Igus Exhibit 2); Declaration of Evgeny (Eugene) I. Rivin at 10–17 (Igus Exhibit 3).

The infringement position of Machine Systems is founded upon several competing contentions. In the view of the Special Master, none of these arguments raises a genuine issue of material fact that prevents the grant of summary judgment of noninfringement with respect to claim 1. First, Machine Systems asserts that the end cap should be treated as integral with the slide body. Under this view, when the claim recites "bearing means mounted to said [slide] body," the mounting is accomplished via the end cap, which is itself a part of the slide body. A principal difficulty with this position is that the written description of the '610 patent consistently distinguishes the slide body from the end caps. *See, e.g.,* Col. 2, Lines 45–46 ("End caps, mounted to the ends of the body, further retain the members with the body."); Col. 2, Lines 50–52 ("when the individual members of the bearing element become worn from use, the end caps are removed from the slide body"); Col. 5, Lines 14–15 ("The end caps 50 are shaped to correspond to the shape of the slide body"); Col. 5, Lines 22–23 ("To secure the end caps 50 to the slide body 14, fasteners 54 are inserted. . . .").

■ In addition, claim 19 of the '610 patent expressly recites a "slide body" and a "retainer means." The Court has construed the latter limitation in part to call for end caps. Order of Claim Construction at 20. Construction of the term "slide body" to incorporate end caps in claim 1, but not in claim 19, would conflict with the general principle that claim limitations should be construed consistently within a particular patent. *See Frank's Casing Crew & Rental Tools, Inc. v. Weatherford Int'l, Inc.,* 389 F.3d 1370, 1377–78 (Fed. Cir.2004).

Second, Machine Systems asserts that the function of the grooves on the Dry-Lin®T slide body is to "mount" the bearing inserts. According to Machine Systems, the bearing inserts are therefore

"mounted" to the slide body in keeping with the wording of claim 1. Viewing the evidence of record in a light that is most favorable to Machine Systems, the Special Master concludes that this contention does not raise a genuine issue of material fact. Physical inspection of the accused product reveals that the bearing inserts are by no means "mounted" within the grooves, in the sense that they are not attached or fixed to the slide body through use of the grooves. Rather, the bearing inserts rest quite loosely between the walls of the groove, and are instead held into place by the insertion of tabs formed on the bearing members into slots formed within the end caps.

■ The prosecution history of the '610 patent further reveals that the infringement position of Machine Systems cannot withstand summary judgment. Although Machine Systems introduced expert reports in favor of its infringement position, neither the Expert Report of Damon L. Mark (Machine Systems Exhibit C) nor the Supplemental Expert Report of Robert D. Pehlke (Machine Systems Exhibit D) address the significance of the prosecution history in this case. During his review of the application that ultimately matured into the '610 patent, the examiner rejected certain pending claims over German Patent No. 4,334,611 to Toru. The applicants responded:

Toru discloses a slide bearing for linear movement that has cylindrical slider elements that rest in half-circle recesses along the body and have protuberances extending from each rod. *These slide elements are not held within the body by the recesses, but instead are only held in place by the protuberances being inserted into corresponding holes on end plates that are subsequently attached to each end of the body.* There is no frictional or press fit ·engagement between the slide elements and the body element. Therefore, assembly of the slide bearing of Toru requires holding the cylindrical slide elements along the partial recesses to prevent them from moving vertically or laterally, while simultaneously aligning both ends of the elements with the holes in the end plates. *This is not what is claimed in the present invention.*

As stated above, the linear guide of the present invention provides engagement between the bearing members and the body prior to the mounting of the body onto its corresponding rail. *The bearing members are thus securely held in place along their entire length during any transportation or further assembly processes.* The end caps of the present invention are only necessary to prevent longitudinal movement of the bearing members during actual use of the slide body of its longitudinal rail.

Because Toru fails to disclose the claimed engagement between the bearing members and the body, Toru cannot anticipate the linear guide of the present invention.

Prosecution History of the '610 Patent, Applicant's Response to Office Action at 6–7 (Jan. 15, 1997) (emphasis added).

■ Because the applicants expressly disclaimed coverage of the Toru reference during prosecution, the '610 patent cannot now be read to cover an accused product that incorporates the same structure, whether under a theory of literal infringement or via the doctrine of equivalents. "The prosecution history constitute a public record of the patentee's representations concerning the scope and meaning of the claims, and competitors are entitled to rely on those representations when ascertaining the degree of lawful conduct, such as designing around the claimed invention." *Seachange Int'l, Inc. v. C–COR Inc.,* 413

F.3d 1361, 1372 (Fed.Cir.2005) (quoting *Hockerson–Halberstadt, Inc. v. Avia Group Int'l Inc.*, 222 F.3d 951, 957 (Fed. Cir.2000)). *See also Purdue Pharma L.P. v. Endo Pharmaceuticals Inc.*, 438 F.3d 1123, 1136 (Fed.Cir.2006) ("Under the doctrine of prosecution disclaimer, a patentee may limit the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution.").

▇▇▇▇▇ In addition, "[t]he doctrine of prosecution history estoppel limits the doctrine of equivalents when an applicant makes a narrowing amendment for purposes of patentability, or clearly and unmistakably surrenders subject matter by arguments made to an examiner." *Salazar v. Procter & Gamble Co.*, 414 F.3d 1342, 1344 (Fed.Cir.2005). "To invoke argument-based estoppel, the prosecution history 'must evince a clear and unmistakable surrender of subject matter.'" *Aquatex Indus.*, 419 F.3d at 1382 (citation omitted). This principle applies with equal force to claim limitations, such as the "mounting means" limitation of claim 1, that are drafted in means-plus-function format. *Alpex Computer Corp. v. Nintendo Co.*, 102 F.3d 1214, 1221–22 (Fed.Cir. 1996) ("Just as prosecution history estoppel may act to estop an equivalence argument under the doctrine of equivalents, positions taken before the PTO may bar an inconsistent position on claim construction under § 112, ¶ 6.")

The Special Master perceives the applicant's statements regarding the distinction between his own invention and Toru—and in particular the assertion that the Toru structure "is not what is claimed in the present invention"—to be clear and unmistakable. In addition, it would be difficult to imagine statements that more seamlessly align with the structure of the accused product than these. As with the slide bearing disclosed in the Toru reference, the accused Igus DryLin®T does not retain the bearing inserts "within the body by the recesses." Rather they are "held in place by the protuberances being inserted into corresponding holes on end plates that are subsequently attached to each end of the body." Further, there is no dispute that the bearing inserts of the accused product are not "securely held along their entire length," but rather loosely sit in the grooves of the slide body. One need not disassemble the unit to make this observation: If the DryLin®T is merely held vertically and moved back and forth, the bearing inserts slip in and out of the grooves.

The Special Master therefore concludes that, as a matter of law, the Igus DryLin®T does not literally infringe claim 1 of the '610 patent. In view of the construed claim language, assessed in light of the '610 patent's prosecution history, no reasonable jury could conclude otherwise. With respect to the doctrine of equivalents, the Special Master concludes that a presumption of prosecution history estoppel has been raised in keeping with *Festo Corp. v. Shoketsu Kinzoku Kabushiki Co.*, 535 U.S. 722, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002). Further, because this invention lies within the simple mechanical arts, and because the Igus DryLin®T structure is, in this respect, identical to that of Toru reference, the Special Master concludes that, as a matter of law, Machine Systems will be unable to overcome this presumption. *See Biagro Western Sales*, 423 F.3d at 1305 ("A patentee may rebut the presumption of surrender by showing that at the time of the amendment one skilled in the art could not reasonably be expected to have drafted a claim that would have literally encompassed the alleged equivalent.") The Special Master therefore recommends that the summary judgment motion of plaintiff Machine Systems be denied, and that the summary judgment of defendant

Igus be granted, with respect to claim 1 of the '610 patent.

■ All but one of the additional asserted claims, claims 2–12 and 14, depend from claim 1. As such, they incorporate each of the limitations of claim 1, including the requirement that the "bearing means" be "mounted to said [slide] body" and that the "mounting means [be] located within said channel." Because "[i]t is axiomatic that dependent claims cannot be found infringed unless the claims from which they depend have been found to have been infringed," *Wahpeton Canvas Co. v. Frontier, Inc.*, 870 F.2d 1546, 1553 (Fed.Cir. 1989), the Special Master recommends that the summary judgment motion of plaintiff Machine Systems be denied, and that the summary judgment motion of defendant Igus be granted, with respect to claims 2–12 and 14 of the '610 patent as well.

### III. Claim 19

The other asserted independent claim of the '610 patent, claim 19, recites (with emphasis added):

19. A linear guide assembly comprising:

a slide body having a top, a bottom, opposing sides and opposing ends, portions of said body defining a channel extending longitudinally through said body between said ends;

a guide rail having a cross-sectional shape corresponding to a cross-sectional shape of said channel, said rail being received within said channel and said body being restricted to longitudinal movement along said rail;

sliding bearing means for facilitating longitudinal sliding movement of said body, *said bearing means being removably and insert mounted to said body,* said bearing means includes a plurality of elongated members having a cross-

section with flats formed thereon and engaging said rail; and

retainer means for retaining said bearing means to said body, said retainer means permitting longitudinal removal and replacement of said bearing means independent of replacement of said body.

This Court has construed the term "removably and insert mounted" to mean "longitudinally inserted into grooves or apertures in the channels, or longitudinally press-fit or inserted into grooves in the channel, and the equivalents." Order of Claim Construction at 15. In addition, the Court already determined that the disclaimers found in the prosecution history of the '610 patent, discussed previously in this Report and Recommendation, apply to claim 19. Order of Claim Construction at 17–18 (quoting applicant's statement to the PTO examiner that "upon review of Toru, Onish and Stotzel, no disclosure is made that anticipates the linear guide of the present invention, as defined in either claim 1, 15, or 19."). The Court discerned from the prosecution history that "[a]pplicants helped define their invention by distinguishing prior art which did not include bearings being frictionally retained to the slide body." *Id.* at 17.

■ The Court's construction of claim 19 is dispositive of the infringement positions in this case. As discussed earlier in this Report and Recommendation, the bearing inserts of the Igus DryLin®T are held in place only via the end cap. If the accused product is held vertically and moved from side to side, the bearing inserts slip in and out of the grooves. Because the bearing inserts of the Igus DryLin®T are not frictionally retained to the slide body, no genuine issue of material fact prevents the Special Master from concluding that the Igus DryLin®T does not

literally infringe claim 19 of the '610 patent as a matter of law. And as with the analysis with respect to claim 1, the Special Master further concludes that the doctrine of prosecution history estoppel prevents Machine Systems from successfully asserting infringement under the doctrine of equivalents.

The Special Master therefore recommends that the summary judgment motion of plaintiff Machine Systems be denied, and that the summary judgment of defendant Igus be granted, with respect to claim 19 of the '610 patent.

## IV. Conclusion

The Special Master therefore recommends that the summary judgment motion of plaintiff Machine Systems be denied, and that the summary judgment motion of defendant Igus be granted.