Joseph Kwame OKOR, Plaintiff–
Appellant,

v.

SEGA OF AMERICA, INC.,
Defendant–Appellee,

and

Nintendo of America, Inc.,
Defendant–Appellee,

and

Sony Computer Entertainment America
Inc., Defendant–Appellee.

No. 01–1339.

United States Court of Appeals,
Federal Circuit.

March 5, 2002.

Rehearing Denied April 17, 2002.

Before BRYSON, GAJARSA, and DYK,
Circuit Judges.

PER CURIAM.

Joseph Kwame Okor contends that appellees Sega of America, Inc., Nintendo of America, Inc., and Sony Computer Entertainment America, Inc., have infringed U.S. Patent No. 4,127,849 ("the '849 patent"), which he owns. Mr. Okor appeals from the decision of the United States District Court for the District of Massachusetts granting summary judgment of non-infringement in favor of the appellees. We *affirm*.

The district court granted summary judgment of non-infringement on three alternative grounds corresponding to sections (a), (f), and (g) of claim 1 of the '849 patent. We conclude that the district court correctly granted summary judgment with respect to section (f) of claim 1, and we do not reach the other two grounds relied upon by the district court.

Claim 1 of the '849 patent recites, inter alia, "(f) a video combiner connected to

said symbol generator and to said display computer for processing said symbol producing signals and delivering them to a selected display device. . . ." The district court construed the term "selected" to require that the claimed invention have (1) the capability to be attached to multiple display devices, and (2) the capability to project different images on different displays.

■ The district court's interpretation of section (f) is consistent with the specification, which makes clear that the claimed invention is capable of delivering different images to different display devices. The specification discloses that one of the objects of the invention is "to provide in a data converter means whereby the resulting picture of the symbol may be distributed to different display devices," '849 patent, col. 1, II. 49–52, and teaches that "[t]he video combiner acts as a video distributor in that it routes the output of each symbol to an appropriate display device on which the given symbol is to be displayed," '849 patent, col. 3, II. 26–29.

The district court's construction of section (f) is also consistent with a statement made to the PTO during the prosecution of the '849 patent. In responding to a rejection by the examiner, Mr. Okor distinguished his invention from the Wagner prior art reference by stating that "Wagner's system does not allow for the selective positioning of symbols on different display screens." Mr. Okor's statement distinguishing the Wagner reference indicates that the term "selected" in section (f) of claim 1 refers to the ability to display different images on different display devices.

Mr. Okor challenges the district court's claim construction by citing to the following disclosure in the specification:

> If there is more than one display device, it is necessary to know on which display devices to display each symbol. The

selector word (S) tells the video combiner 24 where each symbol is to be displayed. The length of the selector word (S) is equal to the number of display devices. If the bit at location i of selector word (S) of symbol j is one, then symbol j could be displayed on display device i.

'849 patent, col. 5, II. 53–59. Mr. Okor argues that this disclosure does not preclude a mode of operation in which all the bits of the selector words are set to one, so that all symbols appear on only one display. According to Mr. Okor, the patent does not require that the claimed invention have the capability of being attached to multiple display devices, but contemplates that it can permanently select a single display device. Although Mr. Okor's argument is correct, it does not advance his position with respect to summary judgment. Even though all the bits of the selector words can be set to a single display device, the claimed invention still has the *capability* of selecting more than one device. For a "selection" to take place, more than one option must exist. In sum, the claim language, the specification, and the prosecution history persuade us that the district court's construction of section (f) of claim 1 is correct.

■ Having determined the meaning of section (f) of claim 1, we turn now to comparing the properly construed claim to the accused devices. Mr. Okor alleges that six products infringe claim 1 of the '849 patent: the Sega Genesis Game Console, the Sega Saturn Game Console, the Nintendo Entertainment System, the Super Nintendo Entertainment System, the Nintendo Gameboy, and the Sony Playstation. The Gameboy is a small handheld game system with its own built-in monitor. All of the other allegedly infringing products are video game console systems that attach to video monitors to display a video image that changes depending on input

from player-activated controllers attached to the game console.

When Sega, Nintendo, and Sony moved for summary judgment of non-infringement, Mr. Okor cross-moved for summary judgment against all three appellees. Mr. Okor does not suggest that there is any genuine dispute of material fact concerning the operation of the accused devices. The undisputed evidence on the record indicates that none of the accused products has the capability to deliver different images to "selected" display devices if more than one display device is attached to the console.

Mr. Okor argues that the accused devices infringe because the capability to display symbols on multiple display devices is inherent in any sprite-based device that uses priority. Specifically, he argues that in any sprite-based device, the identity of the sprite being displayed at any instant is known and that a decision could therefore be made as to whether a given sprite appears on a given display or not. The flaw in Mr. Okor's argument is that he has produced no evidence showing that the accused systems actually make such a selection decision. It is not enough for Mr. Okor to argue that the accused systems could be redesigned to satisfy the claim language. "[A] device does not infringe simply because it is possible to alter it in a way that would satisfy all the limitations of a patent claim." *High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc.*, 49 F.3d 1551, 1555, 33 USPQ2d 2005, 2008 (Fed.Cir.1995); *see also Stryker Corp. v. Davol, Inc.*, 234 F.3d 1252, 1257, 57 USPQ2d 1133, 1137 (Fed.Cir.2000) (summary judgment of non-infringement proper in absence of evidence that accused device was "presently capable" of meeting claim requirements). Instead, the undisputed evidence shows that the accused devices lack the capability to deliver different images to "selected" display devices. Be-

cause the accused devices do not meet the requirements of section (f) of claim 1, the district court properly granted summary judgment of non-infringement. We therefore find it unnecessary to reach the two alternative grounds for summary judgment.

We also decline to address Mr. Okor's arguments regarding infringement under the doctrine of equivalents, raised for the first time in his reply brief to this court. In responding to the defendants' arguments regarding the effect of this court's decision in *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 234 F.3d 558, 56 USPQ2d 1865 (Fed.Cir.2000) (en banc), *cert. granted,* 533 U.S. 915, 121 S.Ct. 2519, 150 L.Ed.2d 692 (2001), Mr. Okor represented to the district court that he was not asserting the doctrine of equivalents and that he was relying exclusively on a theory of literal infringement. Mr. Okor cannot change his position with respect to that issue on appeal.

No costs.