**PIONEER MAGNETICS, INC.,**
**Plaintiff–Appellant,**

v.

**MICRO LINEAR CORPORATION,**
**Defendant–Appellee.**

**No. 00–1012.**

United States Court of Appeals,
Federal Circuit.

June 2, 2003.

Marc E. Brown, Oppenheimer Wolff & Donnelly LLP, of Los Angeles, California for plaintiff-appellant. With him on the brief was George L. Fountain.

Michael A. Ladra, Wilson Sonsini Goodrich & Rosati, of Palo Alto, California for defendant-appellee. With him on the brief were, Vera M. Elson, Behrooz Shariati, and Roger J. Chin.

Before MAYER, Chief Judge,
NEWMAN and LOURIE, Circuit Judges.

PER CURIAM.

After having been decided in light of our en banc decision in *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 234 F.3d 558, 56 USPQ2d 1865 (Fed.Cir.2000), this case returns to us for reconsideration in light of the Supreme Court's decision in *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.*, 535 U.S. 722, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002). Because there was a narrowing amendment and the equivalent at issue was foreseeable at the time of filing, we affirm the district court's judgment. *Pioneer Magnetics, Inc. v. Micro Linear Corp.*, No. 95–CV–8307 (C.D.Cal. Nov. 10, 1998).

## Background

Pioneer Magnetics (Pioneer) owns United States Patent No. 4,677,366 (the '366 patent) directed toward a "unity power factor power supply." The patent describes circuitry designed to receive variant levels of input voltage and to emit a constant output voltage, thereby providing a steady electrical current source to another circuit.

The '366 patent consists of four claims: independent claim 1, and dependent claims 2–4. Claim 1 recites in relevant part: "In a switched power supply: a rectifier adapted to be connected to the alternating current line; a boost converter connected to the output of said rectifier ...; and a control circuit ..., said control circuit including a voltage error amplifier ..., a *switching analog multiplier circuit* ..., a current regulator amplifier ..., and circuit means including a pulse-width modulator ...." '366 patent, col. 6, ll. 7–38 (emphasis added). Claim 2, also relevant to the prosecution history of the '366 patent, recites: "The combination defined in claim 1, in which said multiplier is a switching type, and in which said control circuit includes a timer and ramp signal generator for supplying clock signals to said switching multiplier and ramp signals to said pulse width modulator." *Id.* at col. 6, ll. 39–43.

Pioneer's patent attorney, Keith Beecher, filed the application that matured into the '366 patent on May 12, 1986. The application included nine claims: claim 1 (the only independent claim) and claims 2–9. Four of these original claims are relevant to the issue at hand:

4. The combination defined in claim 3, in which said control circuit *includes a multiplier* ...

5. The combination defined in claim 4, and which includes ... *circuit means* ...

6. The combination defined in claim 5, in which said last-named *circuit means includes a pulse width modulator.*

7. The combination defined in claim 6, in which said *multiplier is a switching type,* and in which said control circuit includes a timer and ramp signal generator for supplying clock signals to said switching multiplier and ramp signals to said pulse width modulator.

(Emphasis added).

The examiner rejected original claims 1–5 and 8–9 under 35 U.S.C. § 102(b) as anticipated by United States Patent No. 4,437,146 (the Carpenter reference). This reference did not disclose a switching multiplier circuit or a pulse-width modulator. The examiner then rejected original claim 6 as indefinite under 35 U.S.C. § 112, second paragraph, stating that "[t]he phrase 'said last-named circuit means' lacks proper antecedent basis in the claims." Claim 7 was dependent upon claim 6, and therefore was rejected on the same basis.

Pioneer did not dispute the rejection. Instead, it amended original claims 1 and 7, and cancelled original claims 2–6. The amendments to claim 1 imported claims 2–6, and had the relevant substantive effect of changing "circuit means" in original claim 5 to "circuit means including a pulse-width modulator" and changing the "multiplier" in original claim 4 to a "switching analog" multiplier circuit. In the remarks section of its amended application, Pioneer explained,

It is believed clear that there is no showing in the cited Carpenter Patent 4,437,146 of the specific combination set forth in amended claim 1. It is also noted that amended claim 1 represents original claim 6 in independent form,

and that claim 6 has been amended to overcome the objection raised under 35 USC § 112.

Despite twice stating that amended claim 1 incorporated original claims 2–6, Pioneer offered no explanation for its addition of the "switching analog" limitation not present in original claims 1–6.

As it stated in its remarks, Pioneer also amended original claim 7 (issued as final claim 2) to depend on amended claim 1, and to specify that the switching multiplier recited in claim 7 be a "pulse-width" type. On January 21, 1987, the examiner held a telephone interview with Beecher to propose an amendment deleting this "pulse-width" limitation. With this additional amendment, the examiner allowed the claims. The patent issued on June 30, 1987.

More than eight years later, on December 14, 1995, Pioneer filed suit against Micro Linear alleging infringement of the '366 patent. In motions seeking interpretation of the claims, the parties requested the court to identify what equivalents of the "switching multiplier" limitation, if any, are barred by prosecution history estoppel. In support of its motion, Pioneer offered a declaration by Beecher that the reason he added the "switching" limitation to claim 1 was inadvertence. The court concluded that a "non-switching multiplier" is outside the permissible range of equivalents of this limitation because Pioneer narrowed claim 1 by adding limitations, including the "switching" limitation, to meet the objections of the Patent and Trademark Office as to the patentability of the claim in light of prior art. In response to this ruling, the parties stipulated that summary judgment of non-infringement be deemed granted to Micro Linear on the grounds that its accused products do not

literally infringe any of the claims of the '366 patent, and that prosecution history estoppel bars Pioneer from asserting under the doctrine of equivalents that the accused products infringe claims containing the "switching analog multiplier circuit" limitation. The district court approved the stipulation and entered a final judgment of non-infringement.

## Discussion

■ We review a district court's grant of summary judgment *de novo. See Vanmoor v. Wal–Mart Stores, Inc.,* 201 F.3d 1363, 1365, 53 USPQ2d 1377, 1378 (Fed.Cir.2000) (citing *Petrolite Corp. v. Baker Hughes Inc.,* 96 F.3d 1423, 1425, 40 USPQ2d 1201, 1203 (Fed.Cir.1996)). Prosecution history estoppel is a question of law that we review *de novo. Cybor Corp. v. FAS Techs., Inc.,* 138 F.3d 1448, 1459–60, 46 USPQ2d 1169, 1177–78 (Fed.Cir. 1998) (en banc) (citations omitted). An accused device that does not literally infringe a claim may still infringe under the doctrine of equivalents if each limitation of the claim is met in the accused device either literally or equivalently. *See Warner-Jenkinson Co. v. Hilton Davis Chem. Co.,* 520 U.S. 17, 40, 117 S.Ct. 1040, 137 L.Ed.2d 146 (1997). Prosecution history estoppel serves to limit the doctrine of equivalents by denying equivalents to a claim limitation whose scope was narrowed during prosecution for reasons related to patentability.

■ To determine whether a claim gives rise to prosecution history estoppel, we first must determine whether the amendment narrowed the literal scope of the claim. Here, there is no dispute that the amendment of claim 1 from a "multiplier" to a "switching analog" multiplier narrowed the literal scope of the claim.

■ Next we examine the reason why the applicant amended a claim. *See Warner–Jenkinson,* 520 U.S. at 32–33, 117 S.Ct. 1040. The burden is on the patent holder to establish that the reason for the amendment is not one related to patentability. *Id.* at 33, 117 S.Ct. 1040. Where no explanation is established, a court should presume that the applicant had a substantial reason related to patentability for the amendment. *Id.*

■ Pioneer contends it added the "switching" limitation through sheer inadvertence, unmotivated by any of the statutory requirements for a patent. To argue that its addition of the "switching" limitation was obviously in error, it relies on (1) the Beecher declaration, (2) the portion of its patent application stating that amended claim 1 incorporated claims 2–6 (which did not include the switching limitation), and (3) its assertion that reading amended claim 1 to include the "switching" limitation would be redundant of amended claim 2.

This argument is unpersuasive. First, we do not consider the Beecher declaration in determining the reason for the amendment to the claim. Only the public record of the patent prosecution, the prosecution history, can be a basis for such a reason. Otherwise the public notice function of the patent record would be undermined. Second, the prosecution history does not show that the reason for the amendment of the term "switching" was inadvertent. Although the Remarks section of the amendments indicates that Pioneer amended claim 1 to state claim 6 in independent form, it is equally possible that Pioneer changed the claim intentionally but inadvertently failed to update the Remarks. Finally, claim 2 is not redundant of claim 1 because it includes the additional limita-

tions of a "timer and ramp signal generator ...." '366 patent, col. 6, ll. 41–43.

■ Pioneer further argues that its amendment adding the "switching" limitation to claim 1 was not related to patentability because it was voluntary and was not offered to overcome any rejection, on prior art or otherwise. However, the mere fact that an amendment is voluntary does not shield it from prosecution history estoppel. *Amgen Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1345, 65 USPQ2d 1385, 1408–09 (Fed.Cir.2003).

We therefore conclude that Pioneer has failed to meet its burden of establishing a reason unrelated to patentability for its amendment. Our own examination of the prosecution history convinces us that the amendment was made to avoid prior art, the classic basis for the application of prosecution history estoppel. *See Warner–Jenkinson,* 520 U.S. at 30–31, 117 S.Ct. 1040; *see also Sextant Avionique, S.A. v. Analog Devices, Inc.*, 172 F.3d 817, 826, 49 USPQ2d 1865, 1871 (Fed.Cir.1999) (citing *Bai v. L & L Wings, Inc.*, 160 F.3d 1350, 1355, 48 USPQ2d 1674, 1677 (Fed.Cir. 1998)) (substantive changes to a claim that clearly respond to an examiner's rejection of that claim as unpatentable over prior art give rise to prosecution history estoppel).

The prosecution history shows that the examiner rejected claims 1–5 and 8–9 in light of the Carpenter reference, which disclosed a power supply containing a non-switching multiplier. Pioneer amended claim 1 to include a switching analog multiplier, which distinguished the '366 invention over Carpenter. Therefore, the addition of this limitation was made to avoid prior art.

■ Having concluded that the district court properly determined that there had been a narrowing amendment for a substantial reason related to patentability, we next turn to whether Pioneer can overcome the presumption that it has surrendered the equivalent in question. The Supreme Court held that the presumption can be overcome if "[t]he equivalent [was] unforeseeable at the time of the application; the rationale underlying the amendment [bears] no more than a tangential relation to the equivalent in question; or there [was] some other reason suggesting that the patentee could not reasonably be expected to have described the insubstantial substitute in question." *Festo,* 535 U.S. at 739, 122 S.Ct. at 1842, 152 L.Ed.2d 944. As noted, the Carpenter reference discloses a non-switching multiplier circuit. Therefore, a non-switching circuit was known in the art and would have been foreseeable at the time of the amendment. The amendment was clearly not tangential to the equivalent in question; the amendment was made to avoid the very prior art that contained the equivalent. And given the equivalent's presence in the prior art cited against the patentee during prosecution, there can be no other reason the patentee could not have described the substitute in question.

Therefore, Pioneer is estopped from arguing that a non-switching multiplier circuit is equivalent to the switching multiplier circuit limitation of the claims in the '366 patent. As the parties have recognized, the determination of these issues is dispositive. It is therefore unnecessary to reach the remainder of the issues briefed by the parties.

### Conclusion

Accordingly, the judgment of the United States District Court for the Central District of California is affirmed.

*AFFIRMED.*