**Joseph Kwame OKOR, Plaintiff–Appellant,**

v.

**ATARI GAMES CORP. and Midway Games Inc., and Capcom Entertainment Inc., and Jaleco USA Inc. (now known as Jaleco Entertainment, Inc.), and Konami of America Inc., and Namco of America Inc., and Sega Enterprises Inc. (USA) and Sega of America Dreamcast, Inc., and Sammy USA Corp., and Sony Corporation of America, and Nintendo of America, Inc., and Acclaim Entertainment Inc., Best Buy Co., Inc., Blockbuster, Inc., Electronic Arts Inc., Electronics Boutique Holdings Corp., Kmart Corporation, Tele–Communications, Inc., Toys R US, and Wal–Mart Stores, Inc., Defendants–Appellees,**

and

**Bandai Co. Ltd. and Taito Corporation, Defendants.**

No. 02–1383, 02–1384, 02–1385.

United States Court of Appeals, Federal Circuit.

Sept. 26, 2003.

Rehearing Denied Nov. 10, 2003.

Before NEWMAN, MICHEL, and RADER, Circuit Judges.

PER CURIAM.

Plaintiff–Appellant Joseph Kwame Okor appeals from a decision of the United States District Court for the District of Massachusetts that (1) granted summary judgment of noninfringement to defendants in Civil Action No. 00–11503 and Civil Action No. 00–11504,[1] and (2) dismissed the claims against the defendants in Civil Action No. 01–10610 on the grounds of claim preclusion and issue preclusion. Because the district court's decision was well-founded in law and in fact, we *affirm*.

### PROCEDURAL BACKGROUND

These cases are the latest in a series of attempts—thus far unsuccessful—by Okor to enforce two patents against companies involved in the video game industry. The patents, U.S. Patent Nos. 4,126,851 ("851 patent") and 4,127,849 (" '849 patent"), both name Okor as the sole inventor. The '851 patent discloses a programmable television game system, and the '849 patent discloses a system for converting coded data into display data.

In 1997, Okor filed suit against Sega of America, Inc. ("Sega") and Nintendo of America, Inc. ("Nintendo"), alleging infringement of the '851 patent. On June 19, 2000, in an unpublished decision, the district court granted summary judgment of noninfringement to both defendants. *Okor v. Sega of America, Inc.*, No. 97–12418, slip op. (D. Mass. June 19, 2000). The Federal Circuit affirmed the judgment, without opinion. *Okor v. Sega of America, Inc.*, 4 Fed.Appx. 939, 2001 WL 125908 at *1 (Fed.Cir.2001).

In 1998, Okor filed two suits: (1) alleging infringement of the '849 patent by the home video-game systems of Sega, Nintendo, and Sony Computer Entertainments America, Inc. ("Sony"), and (2) alleging infringement of the '851 patent by Sony's home video-game system. In a single opinion, the district court granted summary judgment of noninfringement to the defendants in both cases. *Okor v. Sega of America, Inc.*, 193 F.Supp.2d 269, 285 (D.Mass.2001) (*"Okor I"*). The Federal Circuit affirmed the judgments in both cases. *Okor v. Sony Computer Entm't America Inc.*, 35 Fed.Appx. 887, 2002 WL 972206 at *1 (Fed.Cir.2002) (affirming judgment of noninfringement of '851 patent); *Okor v. Sega of America, Inc.*, 30 Fed.Appx. 950, 2002 WL 343415 at *1 (Fed.Cir.2002) (affirming judgment of noninfringement of '849 patent).

In 2002, Okor filed the three instant suits: (1) alleging infringement of the '851 patent by a number of arcade-game manufacturers, (2) alleging infringement of the '849 patent by the same arcade-game manufacturers, and (3) alleging infringe-

---

1. The district court dismissed the claims against two of the defendants in these cases, Bandai Co. Ltd. and Taito Corp., for "want of prosecution in undertaking service upon them." *Okor v. Atari Games Corp.*, Nos. 00–11503, 00–11504, and 01–10610, 2002 WL 823949 at *14–15 (D.Mass. March 26, 2002). Okor does not challenge these dismissals.

ment of the '851 patent by Sega,[2] Nintendo, Sony,[3] and nine companies who were connected to Sega's and/or Nintendo's products (*e.g.*, by selling these products). In a single opinion, the district court granted summary judgment of noninfringement of both the '851 and the '849 patents to the arcade-game manufacturers, and dismissed the claims against Sega, Nintendo, Sony, and the nine other defendants on the grounds of claim preclusion and issue preclusion. *Okor v. Atari Games Corp.*, Nos. 00–11503, 00–11504, and 01–10610, 2002 WL 823949 at *13–15 (D.Mass. March 26, 2002) (*"Okor II"*). Okor then filed the instant appeal.

## DISCUSSION

We review *de novo* both the grant of summary judgment and the dismissal of a suit for failure to state a claim. *See, e.g.*, *Mazzari v. Rogan*, 323 F.3d 1000, 1005 (Fed.Cir.2003) (setting out standard of review for grant of summary judgment); *Univ. of W. Va., Bd. of Trs. v. Vanvoorhies*, 278 F.3d 1288, 1295 (Fed.Cir.2002)(setting out standard of review for dismissal for failure to state a claim).

We divide our analysis by suit, using the district court's case numbers:

### A. Civil Action No. 00–11503

In Civil Action No. 00–11503, Okor asserted only claim 1 of the '851 patent against the arcade-game manufacturers. The claim states:

A system for generating and controlling symbol-producing signals for display on the screen of a television receiver, comprising:

(a) a multiplexer,

(b) a plurality of manual control units operatively connected to said multiplexer for operation by individual players, and including symbol position and control means for generating and transmitting symbol position and control signals,

(c) a plurality of light pens operatively connected to said multiplexer for operation by individual players, each of said pens including light responsive means and pulse producing means responsive to said light responsive means,

(d) a display unit adapted to be located remotely from and responsive to a control unit, said display unit adapted to receive said symbol position and control signals from said control units,

(e) changeable memory means providing program instruction,

(f) a modem providing an interface between said memory means and said display unit,

(g) timing control means operatively connected to said multiplexer for cyclically scanning said multiplexer,

(h) said display unit including symbol generator means for generating symbols for display on said screen, modulator means connecting between said receiver and said symbol generator means responsive to said symbol generator means and said light pens for generating positional information, and computer means operatively connected to said symbol generator means,

---

**2.** Between the earlier cases and now, Sega of America, Inc. changed its name to Sega of America Dreamcast, Inc.

**3.** In his latest suit, Okor names a different Sony entity (Sony Corporation of America) than that named in the earlier litigation (Sony

Computer Entertainments America, Inc.). The district court found the two entities to be part of the same corporate family and, following the lead of the parties, treated them as "Sony." We will do the same.

said background generator means and said multiplexer for controlling the operation thereof.

'851 patent, col. 8, ll. 15–49.

The district court granted summary judgment of noninfringement to the arcade-game manufacturers on a variety of grounds, but we need reach only one: that the accused products do not include a "changeable memory means" as recited in limitation (e). The district court construed "changeable memory means" to require "easy interchangability" of video game programs. *Okor II*, 2002 WL 823949 at *9. The district court based this construction largely on the specification, stating:

> It is impossible to read limitation (e) as being unaffected by the emphasis placed in the patent specification on the easy interchangability of programs enabled by Okor's invention. Indeed, the very object of the invention is stated as one of providing "means [whereby] participating players may engage in any one of a variety of different games." The interchangeability contemplated by limitation (e) cannot be divorced from this practical meaning.

*Id.* (quoting '851 patent, col. 1, ll. 45–46). Because it was an undisputed fact that all of the arcade-game machines at issue used fixed, "read only" memory boards that could only be changed by "taking the device[s] apart," the district court concluded that none of the accused machines satisfied limitation (e). *Okor II*, 2002 WL 823949 at *9.

■ Okor argues on appeal that the district court improperly imported a limitation from the specification, and moreover that the specification does not support "easy interchangeability." Neither argument is persuasive. First, the term "changeable," standing alone, is opaque: in some sense, all memory devices can be "changed," but if limitation (e) embraced all memory devices it would be meaningless. The district court acted properly by looking to the specification for clarification. *See, e.g., Johnson Worldwide Assocs., Inc. v. Zebco Corp.*, 175 F.3d 985, 990 (Fed.Cir. 1999) (approving use of specification to define claim term where "the term or terms chosen by the patentee so deprive the claim of clarity that there is no means by which the scope of the claim may be ascertained from the language used"). Second, the specification provides ample support for "easy interchangeability." For example, the description of the preferred embodiment—which Okor, ironically, relies on as evidence of no easy interchangeability—states:

> Also connected to the analog multiplexer 10 is a modem 24 which acts as an interface between one display unit 26, the analog multiplexer 10 and the external world which might include external storage unit 28 *such as tape recorders, phonograph discs or communication media, such as radio, TV, cable TV, etc. It is through these sources that programs to play a particular game are obtained* or to play games [sic] with other players who are remotely located.

'851 patent, col. 2, ll. 39–48 (emphasis added). All of the listed program sources (*e.g.*, tape recorders) allow for easy interchangeability of games; none has the fixed quality of the memory boards in the accused arcade-game machines. In short, defendants' machines do not literally infringe limitation (e).

Okor does not appear to have argued the doctrine of equivalents as to limitation (e), and in any event no reasonable juror could find the fixed memory boards in defendants' arcade-game machines to be equivalent to the "changeable memory means" recited in limitation (e).

For these reasons, the district court properly granted summary judgment to all defendants in Civil Action No. 00–11503.

## B. Civil Action No. 00–11504

In Civil Action No. 00–11504, Okor asserted only claim 1 of the '849 patent against the arcade-game manufacturers. The claim states:

A system for converting coded data signals for presentation as display symbols on a display device comprising

(a) an input computer adapted to store three-dimensional data with respect to a symbol to be displayed and generate signals corresponding to a two-dimensional display representation of said symbol,

(b) symbol defining means connected to and providing input data to said input computer,

(c) a display computer connected to and receiving the output of said input computer,

(d) at least one dot generator connected to said display computer and controlled thereby, said dot generator adapted to generate a dot producing signal at the beginning of the horizontal position of each symbol,

(e) at least one symbol generator connected to said generator and to said display computer and adapted to generate symbol producing signals at locations indicated by said dot generator, and,

(f) a video combiner connected to said symbol generator and to said display computer for processing said symbol producing signals and delivering them to a selected display device,

(g) said dot generator including $x$ and $y$ comparators and $x$ and $y$ stacks operatively connected to one another and to said display computer, said $x$

and $y$ comparators receiving, respectively, $x$ and $y$ counts corresponding to the $x$ and $y$ addresses of said symbols.

'849 patent, col. 14, ll. 58–68, col. 15, ll. 1–19.

The district court granted summary judgment of noninfringement on a variety of grounds, some of which were applicable to only certain defendants; we need reach only the ground that all defendants' machines failed to read on limitation (g). All parties agree that limitation (g) describes the memory architecture for the claimed "dot generator." The district court relied on its earlier construction of limitation (g) in Civil Action No. 98–12176. In that earlier case, the district court found, based on the language of the claim, the specification, the prosecution history, expert testimony, and the deposition testimony of Okor, that limitation (g) described a "stack" memory system. *See Okor I,* 193 F.Supp.2d at 277–78. This stack system, the district court concluded, differed from certain other memory systems, including "frame-buffer, bit-map" systems. *E.g., id.* at 279–80 ("Playstation, because it uses a frame-buffer, bit-map memory system, does not have a dot generator with × and y comparators and × and y stacks as those terms have meaning in the '849 patent."). In Civil Action No. 00–11504, because it was an undisputed fact that "all of the accused arcade games operate by means of frame buffers," the district court concluded that none of the accused devices literally read on limitation (g). *Okor II,* 2002 WL 823949 at *11. Indeed, the district court noted that Okor essentially conceded that the arcade-game manufacturers did not literally infringe limitation (g):

Okor does not now challenge my construction [of limitation (g) ], nor appear to suggest that a frame buffer display system ought to be read as literally

reading upon the claim limitation. Accordingly, I adhere to my prior reasoning [in Civil Action No. 98–12176] in noting that the arcade games accused here do not literally read upon limitation (g).

*Id.*

Okor did, however, press the doctrine of equivalents. The district court held that because Okor had added limitation (g) through amendment, Okor was estopped from asserting infringement by equivalents, under the "absolute bar" set out in our *en banc* decision in *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,* 234 F.3d 558 (Fed.Cir.2000). As Okor now emphasizes, our *en banc* decision was subsequently reversed by the Supreme Court's decision in *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., Ltd.,* 535 U.S. 722, 122 S.Ct. 1831, 152 L.Ed.2d 944 (2002), which replaced the "absolute bar" with a "flexible bar." Okor argues that under the new test, he is not estopped from asserting infringement by equivalents of limitation (g), and that in any event the case must be remanded to the district court for application of the new test.

We disagree on both counts. "Prosecution history estoppel is a question of law," *Pioneer Magnetics, Inc. v. Micro Linear Corp.,* 330 F.3d 1352, 1356 (Fed.Cir.2003), and on the current record, we can decide the question ourselves. The Supreme Court's *Festo* decision requires a two-part analysis: first, we must decide whether Okor filed "a narrowing amendment made to satisfy any requirement of the Patent Act," *Festo,* 535 U.S. at 736, 122 S.Ct. 1831, and second, we must determine whether the amendment "surrender[ed] the particular equivalent in question," *id.* at 740., 122 S.Ct. 1831 On the surrender inquiry, the patentee must overcome the presumption that "the patentee surren-

dered all subject matter between the broader and narrower language." *Id.*

■ The first part of the *Festo* test is plainly met. Indeed, in the remarks accompanying his amendment of claim 1 to add limitation (g), Okor stated, "Claim 1 has been amended to define the invention more clearly over the art." (Okor's App. at A0703.) The second part of the *Festo* test is also satisfied. In his remarks accompanying his amendment, Okor distinguished his memory system from a prior art system by stating "[t]he difference between the two systems is that in [the prior art system] the amount of memory required to store these parameters is proportional to the resolution of the display screen, whereas in applicant's arrangement the amount of memory required is proportional to the number of symbols to be displayed independent of the resolution of the screen." (*Id.* at A0705.) The district court found in *Okor I* that a framebuffer, bit-map memory system uses "a quantity of memory related to the resolution of the screen, not the number of symbols to be displayed." 193 F.Supp.2d at 279. *See also id.* at 278 (describing the memory size in a frame-buffer, bit-map system as "in proportion to the resolution of the screen, not the number of symbols being stored").

On this record, Okor cannot carry his "burden of showing that the amendment d[id] not surrender the particular equivalent in question." *Festo,* 535 U.S. at 740, 122 S.Ct. 1831. Okor cannot establish that memory systems of the type used by defendants were "unforeseeable at the time of the application," *id.;* in his comments to the Patent Office, Okor expressly discussed prior art systems that linked memory to screen resolution. Nor can Okor argue that "the rationale underlying the amendment ... bear[s] no more than a tangential relation to the equivalent in

question," *id.;* to the contrary, the amendment directly relates to the equivalent in question. Nor can Okor plausibly point to "some other reason suggesting that [Okor] could not reasonably [have] be[en] expected to have described" in his claims defendants' memory systems. *Id.* at 741, 122 S.Ct. 1831. In short, Okor surrendered frame-buffer, bit-map memory systems— which the arcade-game manufacturers employ in their machines.

For these reasons, the district court properly granted summary judgment to all defendants in Civil Action No. 00–11504.

## C. Civil Action No. 01–10610

In Civil Action No. 01–10610, Okor alleged (for the second time) that Sega's and Nintendo's home video-game systems infringed the '851 patent, and also alleged that Sony and nine other defendants were liable for infringement based on selling, developing software for, or otherwise being connected to Sega's and/or Nintendo's systems. The district court granted a joint motion to dismiss filed by Sega, Nintendo, and Sony, and *sua sponte* dismissed the claims against the nine other defendants. The grounds for the dismissals were claim preclusion and issue preclusion, which we will address in turn.

### 1. Claim Preclusion

The district court found that the claims against Sega and Nintendo were barred by the doctrine of claim preclusion (or "res judicata"). The district court determined that Sony was not entitled to dismissal based on claim preclusion, because while Sony had obtained summary judgment of noninfringement of the '851 patent in an earlier litigation, that earlier litigation dealt with Sony's Playstation home video-game console, and Civil Action No. 01–10610 dealt with Sony's role as a software

developer for Nintendo. *Okor II,* 2002 WL 823949 at *13.

In reviewing the district court's dismissals based on claim preclusion, we apply First Circuit law. *See Media Techs. Licensing, LLC v. Upper Deck Co.,* 334 F.3d 1366, 1369 (Fed.Cir.2003) ("Because this case turns on general principles of claim preclusion, not on any rule of law having special application to patent cases, we apply the law of the regional circuit in which the district court sits...."). The First Circuit has set out three required elements for claim preclusion: "(1) a final judgment on the merits in an earlier suit, (2) sufficient identicality between the causes of action asserted in the earlier and later suits, and (3) sufficient identicality between the parties in the two suits." *Mass. Sch. of Law at Andover, Inc. v. American Bar Ass'n,* 142 F.3d 26, 37 (1st Cir.1998) (quoting *Gonzalez v. Banco Cent. Corp.,* 27 F.3d 751, 755 (1st Cir.1994)).

The district court determined that "[a]ll three factors for claim preclusion are met with respect to Okor's new claims against Sega and Nintendo, sued on the basis of the very same home video game consoles I found not to infringe the '851 patent in [the district court's June 19, 2000 decision]." *Okor II,* 2002 WL 823949 at *13. The district court emphasized that "[t]he doctrine of claim preclusion operates precisely to prevent the open-ended litigation to which Okor aspires," and that "even if Okor were now to supply new evidence of infringement—something in point of fact he has not done—or posit a new theory of infringement, my prior grant of summary judgment of non-infringement of the '851 patent to Sega and Nintendo cannot be reopened." *Id.*

Okor fails to raise a colorable argument undercutting the district court's reasoning on claim preclusion.

## 2. Issue Preclusion

The district court found that the claims against Sony and the other nine defendants were doomed by the doctrine of issue preclusion (or "collateral estoppel").[4] *Id.* In reviewing this judgment, we apply First Circuit law. *See Torpharm, Inc. v. Ranbaxy Pharms., Inc.,* 336 F.3d 1322, 1326–27 (Fed.Cir.2003) ("As we do for other matters that do not implicate this court's specialized jurisdiction, we review the application of collateral estoppel as a matter of regional circuit law."). The First Circuit applies issue preclusion where (1) an earlier decision involved "the *same issue* of law or fact" as a later case, (2) "the parties *actually litigated* the issue" in the earlier case, (3) the earlier court "*actually resolved* the issue in a final and binding judgment," and (4) the earlier court's "resolution of that issue was *essential* to its judgment (i.e., necessary to its holding)." *Monarch Life Ins. Co. v. Ropes & Gray,* 65 F.3d 973, 978 (1st Cir.1995) (emphases in original). "A party invoking issue preclusion need not show that it was privy to the first proceeding. It need only show that 'the party against whom issue preclusion will be applied had a fair opportunity to litigate the issue fully.'" *Id.* at n. 8 (citations omitted).

The district court determined that Okor's claims against Sony and the other nine defendants—which were premised on Sony's and the other defendants' connections to Sega's and/or Nintendo's products, *see Okor II,* 2002 WL 823949 at *4— necessarily failed because Okor was precluded from arguing that Sega's and Nintendo's products infringed the '851 patent, given the district court's earlier "determi-

nation that Okor had failed to provide evidence that any of Sega['s] and Nintendo's accused home video game consoles had ever actually been configured in a potentially infringing manner." *Id.* at *13. The district court stressed that "Okor nowhere suggests that he was denied 'a fair opportunity procedurally, substantively and evidentially to pursue his [infringement] claim [against Sega and Nintendo] the first time,' and the record of the several proceedings is clear that no such opportunity has been denied him." *Id.* (citation omitted).

Okor argues that even if Nintendo's and Sega's video-game systems did not infringe, the other defendants could be liable as contributory infringers if the *combination* of their products (*e.g.,* software) and Nintendo's or Sega's systems created infringing products. This is incorrect as a matter of law. *See, e.g., Epcon Gas Sys., Inc. v. Bauer Compressors, Inc.,* 279 F.3d 1022, 1033 (Fed.Cir.2002) (stating that both inducement of infringement and contributory infringement require proof of "direct infringement by some party"). Okor's remaining arguments against issue preclusion are groundless.

## CONCLUSION

The district court's judgments in all three cases are affirmed.

---

**4.** As discussed above, the district court determined that claim preclusion did not apply to the claims against Sony. Nor could it apply to the claims against the other nine defendants, because those defendants were not parties in earlier litigation with Okor. *See Mass. Sch. of Law,* 142 F.3d at 37 (requiring "sufficient identicality between the parties in the two suits" as a condition for claim preclusion).