NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**CAP EXPORT, LLC,**
*Plaintiff/Counterclaim Defendant-Appellee*

**ABRAHAM AMOUYAL,**
*Third-Party Defendant-Appellee*

**4MODA CORP.,**
*Third-Party Defendant*
**v.**

**ZINUS, INC.,**
*Defendant/Third Party Plaintiff/Counterclaimant-Appellant*

**DOES, 1 THROUGH 10, INCLUSIVE,**
*Defendant*

---

2021-2159

---

Appeal from the United States District Court for the Central District of California in No. 2:16-cv-00371-JWH-MRW, Judge John W. Holcomb.

---

Decided:  September 22, 2022

---

DAVID BEITCHMAN, Beitchman & Zekian, PC, Encino, CA, argued for Cap Export, LLC, Abraham Amouyal.  Also represented by MILORD A. KESHISHIAN, Milord & Associates, PC, Los Angeles, CA.

MATTHEW WOLF, Arnold & Porter Kaye Scholer LLP, Washington, DC, argued for Zinus, Inc.  Also represented by JIN-SUK PARK; RYAN M. NISHIMOTO, Los Angeles, CA.

_____

Before DYK, TARANTO, and STOLL, *Circuit Judges.*

STOLL, *Circuit Judge.*

This case comes to us on appeal for a third time.  Zinus, Inc. appeals the United States District Court for the Central District of California's summary judgment of invalidity under the on-sale bar, 35 U.S.C. § 102(a)(1), (b)(1).  Because there are material factual disputes regarding whether the on-sale product anticipates the asserted claims of U.S. Patent No. 8,931,123, we vacate the district court's summary judgment and remand.

## BACKGROUND

Zinus is the current assignee of the '123 patent, which is directed to "[a]n assemblable mattress support [that] can be shipped with all of its components compactly packed into the headboard." '123 patent, Abstract.  Claim 1 is representative:

1. A mattress support comprising:

a longitudinal bar with a first connector and a second connector;

a headboard with a compartment and a third connector; and

*a footboard with a fourth connector*, wherein the first connector is adapted to attach to the third connector, *wherein the second connector is adapted to*

> *attach to the fourth connector*, wherein legs are attached to a bottom side of the footboard, wherein the longitudinal bar and the footboard fit inside the compartment of the headboard, wherein the first connector is directly connected to the third connector, and the second connector is directly connected to the fourth connector in an assembled state of the mattress support, wherein the first connector is not connected to the third connector, and the second connector is not connected to the fourth connector in a compact state of the mattress support, and wherein the longitudinal bar and the footboard are contained inside the compartment in the compact state of the mattress support.

*Id.* at col. 6 ll. 21–40 (emphasis added to highlight the disputed limitation on appeal).

The protracted history of this case goes back to at least 2016, when Cap Export, LLC filed a declaratory judgment action against Zinus, alleging that the '123 patent claims are invalid and not infringed. Zinus counterclaimed, alleging (among various state law counterclaims) that Cap Export infringed the '123 patent claims.

After two appeals to this court and multiple remands to the district court, Cap Export filed a motion for summary judgment of invalidity under the on-sale bar. Cap Export's invalidity theory is based on the sale of a particular bed-in-a-box product—the "Mersin" bed—sold by third party Woody Furniture to Zinus's then-president Colin Lawrie before the '123 patent's critical date. Although disputed at the district court, Zinus does not dispute on appeal that this sale was a commercial sale or that the bed was ready for patenting. Instead, the crux of the parties' dispute before the district court, as relevant on appeal, was whether the assembly instructions that accompanied the Mersin bed sold to Mr. Lawrie, which on their face indicate that

they were for the "Fusion" bed, also applied to the Mersin bed.

Zinus presented testimony suggesting the Fusion bed instructions might have been mistakenly included in the Mersin bed box.  Specifically, in connection with its brief opposing summary judgment, Zinus provided a declaration from its former Director of Marketing, Cyndi Hunting.  As part of her job, Ms. Hunting stated she "was responsible for monitoring upholstered platform bed offerings of the competition in the market, and specifically on the Internet." J.A. 9054 (Hunting Decl. ¶ 5).  Based on her experience working in the industry, Ms. Hunting explained that "it is not uncommon for assembly instructions for one version of a bed type to be put into the shipping boxes for another version of the bed type," due to "a mistake, sloppiness, or a failure to update/correct the assembly instructions." J.A. 9060 (Hunting Decl. ¶ 27).

There is no dispute on appeal that the product disclosed in the Fusion bed assembly instructions would satisfy every element of claim 1.  As shown in step 6 of the assembly instructions (reproduced below), a tab on a longitudinal bar 4 inserts into a bracket on the footboard (shown between 1 and 2).  The parties dispute, however, whether the Mersin bed is constructed in the same way as the Fusion bed such that it satisfies every element of that claim— specifically, whether it has a "longitudinal bar" with a "second connector" that is "adapted to attach" to a "fourth connector" on the "footboard."   '123 patent col. 6 ll. 21–40. Zinus presented evidence that it alleged shows that the as-sold Mersin bed does not include the connector shown in step 6 of the assembly instructions, including a photo of the as-sold Mersin bed taken from an inspection report.  Step

6 of the instructions and the photo are reproduced side-by-side below:

J.A. 8424 (Fusion assembly instructions, excerpted); J.A. 8434 (photo of Mersin bed from inspection report, excerpted).



In her declaration on behalf of Zinus, Ms. Hunting discussed the Fusion bed assembly instructions, explaining that "the end of the rail (4) appears to have a downward oriented tab" that "appears to be fashioned to engage a bracket" located between (1) and (2). J.A. 9059–60 (Hunting Decl. ¶ 24). She further explained that, in contrast, the photograph of the Mersin bed shows "neither one of th[e] two structures (a tongue or a bracket)" that is shown in the Fusion assembly instructions. J.A. 9060 (Hunting Decl. ¶ 25). She continued: "What is pictured [in the photo] is most likely a hole. The rail does not appear to have any downward oriented tongue. The fabric is not bulging outward as would be the case if the wings of the bracket were underneath the fabric." *Id.* She thus concluded that the Fusion bed and the as-sold Mersin bed are different.

She wasn't the only one to come to this conclusion. Mr. Jayson Lee, a member of Zinus's research and development team, explained that the cost of production for the Mersin bed shown in the inspection report was low. He suggested that this was due, in part, to the design of the

bed having a center support rail that is inserted into a slot in the footboard rather than having a center support rail with a connector that attaches to another connector on the footboard.  J.A. 9068–69 (Lee Decl. ¶ 9).  This design, he said, would result in a "lower material cost," consistent with the low material cost reported on the inspection report.  *Id.*

Cap Export, for its part, argued that the Fusion and Mersin beds were one and the same and therefore that the Fusion assembly instructions depicted what was shown in the photo from the inspection report.  That is, Cap Export argued that the instructions clarified that the Mersin bed did indeed have the requisite connectors on the center rail and the footboard, not just a hole for the rail to slide into. It relied principally on the testimony of third-party witness Agnes Tan, Woody's marketing director.  During her deposition, Ms. Tan testified that Woody's Mersin bed has a PC001 factory code, and that this factory code is for Woody's "bed in a box" product.  J.A. 8447 (Tan Dep. 17:8–14, 18:13–14).  She also confirmed that "[a]ny time there is a PC001 as the first part of the identifying code, that refers to the 'bed in a box.'"  *Id.* (Tan Dep. 19:11–15).  She further testified that products with the PC001 factory code are "all the same constructions" but with different possible stitching on the headboard.  *Id.* (Tan Dep. 18:18–19:10).  She also testified that "Mersin" is the name that Jusama Group Consulting Inc.[1] calls the product.  Because the Fusion bed assembly instructions were also for a "bed-in-a-box" product, Cap Export argued that it necessarily had a PC001 factory code and the same construction as the Mersin bed-in-a-box product, thus defeating Zinus's theory that the photo from the inspection report

---

[1]    Mr. Lawrie was part-owner of Jusama (a sales representative for Zinus Inc. (Korea)) when Jusama purchased the Mersin bed from Woody.

showed a hole in the footboard of the Mersin bed for the center support rail to slide into instead of tab and bracket connectors.

The district court agreed with Cap Export. In doing so, it considered the Fusion assembly instructions alongside the photo of the as-sold Mersin bed from the inspection report, concluding that Ms. Tan's testimony "demonstrates that they are the same bed-in-a-box product." *Cap Export, LLC. v. Zinus, Inc.*, 542 F. Supp. 3d 968, 981 (C.D. Cal. 2021) (*Summary Judgment Op.*) (citing J.A. 8447 (Tan Dep. 17:8–20:21)). Using the Fusion assembly instructions to "explain how to connect the [Mersin bed's] longitudinal bar . . . to the headboard and footboard," the district court concluded that the on-sale Mersin bed satisfied every element of the claims, including the requisite connector on the longitudinal bar configured to attach to the connector on the footboard. *See id.* at 988–91. The court entered summary judgment of invalidity on this basis.[2]

Zinus appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

## DISCUSSION

We review the district court's summary judgment under the law of the regional circuit, here the Ninth Circuit. *Pharma Tech Sols., Inc. v. LifeScan, Inc.*, 942 F.3d 1372, 1379–80 (Fed. Cir. 2019). "The Ninth Circuit reviews a

---

[2] Cap Export also argued before the district court that even if Zinus was correct that the picture of the as-sold Fusion bed showed the longitudinal bar inserted into a hole in the footboard, it would still anticipate the patent claims, because a male-female connection mechanism would anticipate the disputed connector limitations. The district court did not address this argument in reaching its decision, and, accordingly, the parties did not brief it on appeal.

district court's grant of summary judgment de novo." *Id.* at 1380 (citing *Forester v. Chertoff*, 500 F.3d 920, 923 (9th Cir. 2007)). Summary judgment is only appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Whether a patent is invalid under the on-sale bar is a question of law based on underlying fact findings. *Meds. Co. v. Hospira, Inc.*, 827 F.3d 1363, 1371 (Fed. Cir. 2016) (en banc). The on-sale bar is triggered if, before the critical date, the claimed invention was both (1) the subject of a commercial offer for sale and (2) ready for patenting. *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 67 (1998). "The invention that is the subject matter of the offer for sale must satisfy each claim limitation of the patent," and "it may do so inherently." *Scaltech, Inc. v. Retec/Tetra, LLC*, 269 F.3d 1321, 1329 (Fed. Cir. 2001). Because anticipation is a question of fact, summary judgment of invalidity under the on-sale bar is only proper "if no reasonable jury could find that the patent is not anticipated" by the on-sale product. *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1327 (Fed. Cir. 2001).

On appeal, Zinus argues that multiple disputed facts preclude summary judgment. Zinus argues, as it did below, that there is a factual dispute over whether the Fusion assembly instructions apply to the as-sold Mersin bed, citing the testimony from Ms. Hunting that those instructions could have been placed in the Mersin box by mistake as well as Ms. Hunting's interpretation of the photo from the inspection report. Cap Export defends the district court's judgment, arguing that Ms. Tan's testimony establishes that the two beds are one and the same. We agree with Zinus that there are genuine disputes of material fact. Indeed, there are factual disputes regarding whether the Fusion bed and Mersin bed are the same structurally, whether the Fusion instructions describe the structure of the as-sold Mersin bed, and what exactly the ambiguous

photo of the Mersin bed depicts. Accordingly, summary judgment was improperly granted.

The district court reviewed the evidence and concluded that no reasonable jury could find that the Fusion instructions do not apply to the as-sold Mersin bed. To do so, however, the court had to make factual inferences in Cap Export's favor. For instance, the court inferred from Ms. Tan's testimony that the PC001 factory code must apply to the Fusion bed, demonstrating that the Fusion and Mersin beds are the same. *Summary Judgment Op.*, 542 F. Supp. 3d at 981. While a jury could infer this conclusion from Ms. Tan's testimony, this is not the only inference one could reasonably draw given the vague manner in which Ms. Tan testified. Indeed, Ms. Tan did not testify that the Fusion bed had a PC001 factory code; rather, this must be inferred from her other testimony. Such an inference would favor the movant, Cap Export, as opposed to the non-movant, Zinus, which is procedurally improper on summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (at summary judgment, "the weighing of the evidence[] and the drawing of legitimate inferences from the facts are jury functions," "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor").

The district court also ignored Ms. Hunting's declaration, which contained factual assertions that tend to undermine the court's factual conclusion that the Fusion assembly instructions apply to the Mersin bed. Taking the record as whole, some evidence supports a conclusion that the Fusion assembly instructions apply to the Mersin bed and some detracts from that conclusion.

Whether the Fusion assembly instructions apply to the Mersin bed is no doubt material to the parties' dispute regarding whether the on-sale Mersin bed in fact satisfies all of the claim limitations. Should a jury agree with non-movant Zinus and find that the Fusion assembly instructions

do not apply to the Mersin bed, Cap Export would be left with the photograph of the Mersin bed as the only evidence with which to prove that the on-sale Mersin bed anticipates the '123 patent claims. But what exactly that photograph shows is also a disputed factual question for the jury to consider. Zinus put forward testimony from Ms. Hunting and Mr. Lee that what is depicted in the photograph is a hole in the footboard for the center support rail to slide into. That is, record evidence could support a factual conclusion that neither the footboard nor the center support rail has the claimed connectors that attach to one another.

In sum, while Cap Export presented strong evidence connecting the Fusion instructions to the Mersin bed, there are nonetheless genuine disputes of material fact that preclude summary judgment. On remand, however, we would "not foreclose the district court from entertaining a motion for summary judgment" on a slightly more developed factual record "that might obviate the need for a further trial." *Medisim Ltd. v. BestMed, LLC*, 758 F.3d 1352, 1361 (Fed. Cir. 2014) (quoting *ArcelorMittal Fr. v. AK Steel Corp.*, 700 F.3d 1314, 1326 (Fed. Cir. 2012)). The factual disputes here relate to very targeted issues, e.g., whether the Fusion bed and the Mersin bed are in fact one and the same with respect to the features claimed in the '123 patent. Should Cap Export produce additional evidence, summary judgment might well be appropriate at that time.

CONCLUSION

We have considered the parties' remaining arguments and are not persuaded. For the foregoing reasons, we vacate the district court's summary judgment and remand for further proceedings.

**VACATED AND REMANDED**

COSTS

No costs.